UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| SPINS LLC, et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>BEDROCK ANALYTICS LLC,<br><br>   Defendant. | Case No. 24-mc-80183-LB<br><br>**DISCOVERY ORDER**<br><br>Re: ECF No. 1 |

## INTRODUCTION

 In this miscellaneous action, SPINS moves to compel third-party discovery from Bedrock Analytics (based in Oakland) for use in an antitrust case in the District of Colorado. The request for production is for (1) the identity of Bedrock's customers, (2) the types of data that Bedrock analyzed for its customers, (3) pricing information for the types of services that Bedrock offered its customers, and (4) the duration of Bedrock's service contracts with its customers.[1] Bedrock resists only category one — the production of its customers' identity — on the grounds that it is not relevant and that SPINS might use the information to obtain a competitive advantage, including by threatening Bedrock's customers with litigation.[2] Similar discovery has been produced pursuant to the protective

---

[1] Mot. – ECF No. 1 at 4, 7 (citing RFP No. 4); Opp'n – ECF No. 17 at 5 (same). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Opp'n – ECF No. 17 at 5–6, 11–13.

ORDER – No. 24-mc-80183-LB

order in the underlying case. The protective order prohibits the use that Bedrock fears. The court orders the production of discovery pursuant to the protective order.

**STATEMENT**

SPINS is a defendant in the antitrust case. The plaintiff is Crownanalytics, which provides data-analytics services to manufacturers of consumer packaged goods.[3] The manufacturers license point-of-sale data from sources that include defendants SPINS and Circana, which are two of the three competitors that provide retail-tracking data in the alleged data market for "Natural and Organic Consumer Packaged Goods." SPINS and Circana allegedly colluded to force customers for the point-of-sales data to use SPINS for their data-analytic needs so that SPINS would obtain a monopoly in the data-analytics market.[4] There is also a tying claim based on the defendants' "coerc[ing] customers into contracts that operate as negative tying arrangements by conditioning the purchase and use of data on an agreement not to buy or use the services of Crownanalytics (and other competitors in the Data Analytics Market)."[5]

Crownanalytics alleges competitive harm in the data-analytics market, including reduced consumer choice, reduced quality of output, and increased prices.[6] It also alleges that Nielsen, a large company that is a major source of point-of-sale data for consumer packaged goods, is an inferior choice, thereby giving SPINS and Circana market power that allows them to foreclose customer choice regarding data analytics.[7]

Bedrock is a third-party data-analytics firm, sells in the data-analytics market alleged in the antitrust action, is one of four principal competitors in the market, and "served most customers" in the alleged market.[8] Plaintiff Crownanalytics alleges that Bedrock has been "cut off from its

---

[3] First Am. Compl., Ex. 1 to Tepas Decl. – ECF No. 1 at 21 (¶ 4)

[4] *Id.* at 22–23 (¶¶ 8, 11), 26 (¶ 26) (referencing defendants SPINS and IRI). Circana used to be known as Information Resources, Inc., or IRI. Salcido Decl. – ECF No. 18 at 2 (¶ 2).

[5] First Am. Compl., Ex. 1 to Tepas Decl. – ECF No. 1 at 49–50 (¶ 131).

[6] *Id.* at 43 (¶ 97).

[7] *Id.* at 26 (¶ 26), 29 (¶ 35).

[8] *Id.* at 30 (¶¶ 41–42).

customers by SPINS and [Circana]" and that "no third party is providing analytics services to customers independently from the concerted efforts of SPINS and [Circana]."[9] Nielsen, a major source of point-of-sales data, is an inferior choice, thus giving market power to SPINS and Circada.[10]

The dispute here is about four categories of information in RFP No. 4 in the subpoena: (1) the identity of Bedrock's customers; (2) the types of data that Bedrock analyzed for its customers; (3) pricing information for the types of services that Bedrock offered its customers; and (4) the duration of Bedrock's service contracts with its customers.[11] Bedrock did not dispute categories two through four and challenges only the production of its customers' identity on the ground that it is not relevant and SPINS might use the information to obtain a competitive advantage, including by threatening Bedrock's customers with litigation.[12] It references a letter that SPINS sent in 2019 about stopping access to SPINS data.[13] The protective order in the District of Colorado allows the producing party (including third parties) to designate documents AEO.[14] SPINS said in its briefs and at the hearing that it will comply with the protective order.[15]

All parties consented to magistrate jurisdiction.[16] The court held a hearing on August 29, 2024.

## STANDARD OF REVIEW

Federal Rules of Civil Procedure 45(d) and 26 guide the court's enforcement of non-party subpoenas. Under Rule 26(b)(1), a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

---

[9] *Id.* at 42 (¶ 92).

[10] *Id.* at 26 (¶ 26), 29 (¶ 35).

[11] Mot. – ECF No. 1 at 7 (citing RFP No. 4); Opp'n – ECF No. 17 at 5 (same).

[12] Opp'n – ECF No. 17 at 5–6, 11–13.

[13] *Id.* at 17 & Letter, Ex. D to *id.* – ECF No. 18-4.

[14] Protective Order, Ex. 2 to Tapas Decl. – ECF No. 1 at 69 (¶ 4), 71 (¶ 7).

[15] Mot. – ECF No. 1 at 13–14; Reply – ECF No. 23 at 12.

[16] Consents – ECF Nos. 13, 22.

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." The scope of discovery is the same under Rule 45. Fed. R. Civ. P. 45 advisory committee note to 1970 amendment ("the scope of discovery through a subpoena is the same as that applicable to ... other discovery rules"); *GreenCycle Paint, Inc. v. PaintCare, Inc.*, No. 15-cv-04059-MEJ, 2018 WL 1399865, at *2 (N.D. Cal. Mar. 19, 2018).

"Non-parties that are unrelated to the litigants should not be burdened in discovery to the same extent as litigants, and requests to them must be drawn narrowly to meet specific needs for information." *Updateme Inc. v. Axel Springer SE*, No. 17-cv-05054-SI (LB), 2018 WL 5734670, at *3 (N.D. Cal. Oct. 31, 2018) (collecting cases). "Generally, the party moving to quash . . . bears the burden of persuasion, but the party issuing the subpoena must demonstrate that the information is relevant and material to the allegations and claims at issue in the proceedings." *GreenCycle*, 2018 WL 1399865, at *3 (cleaned up)

## ANALYSIS

The issues are the relevance of the identity of the customers and Bedrock's concern that production of that information would put it at a competitive disadvantage. The information is relevant, and the protective order address the concerns about a competitive disadvantage.

First, the information is relevant to the claims and defenses in the underlying information. Crownanalytics alleged that Bedrock is one of four competitors in the alleged market and that SPINS's conduct has cut Bedrock off from its customers and foreclosed competition. The identity of customers is important because SPINS must rebut that allegation through evidence of economic activity by market participants that disproves Crownanalytics's allegations. Customer identities are relevant to establish that Bedrocks provides a competitive alternative to customers who stopped working with Crownanalytics. The cases that Bedrock cites about disclosure of customer identity are distinguishable: in the first, the plaintiff did not ask for customer information (and the court sua sponte redacted customer identities), and in the second, the discoverability of customer information

was not an issue (and instead, the issue was production of all contracts when the relevant contractual language was the same in all contracts and had been produced).[17]

Second, the protective order guards against the alleged harms to Bedrock's competitive advantage. As discussed more fully at the hearing, not only are there consequences for violating that order, but also, similar information has been ordered disclosed pursuant to the protective order without issue. The court accepts counsel's representation that it will comply with the order.

## CONCLUSION

The court grants the motion to compel discovery.

**IT IS SO ORDERED.**

Dated: September 2, 2024

LAUREL BEELER
United States Magistrate Judge

---

[17] Reply – ECF No. 23 at 6–7 (addressing and distinguishing *Lykes Bros. Inc. v. Aaction Mulch, Inc*, No. 2:08-cv-399-FTM-99SPC, 2009 WL 10669857, at *1 (M.D. Fla. Oct. 1, 2009), and *Katzkin Leather, Inc. v. Roadwire*, No. CV 20-2093, 2021 WL 4690586, at *4 (C.D. Cal. Apr. 16, 2021)).